UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ERNESTO LARA and LORENA LARA, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:13-CV-1686-B |
| WELLS FARGO BANK, N.A. | § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Wells Fargo Bank, N.A.'s Motion to Dismiss (doc. 4), filed

pursuant to Rule 12(b)(6) on June 7, 2013. For the reasons that follow, Defendant's Motion to

Dismiss is **GRANTED.**

I.

BACKGROUND[1]

This case arises out of an attempted foreclosure of Plaintiffs' home by Defendant. Plaintiffs

fell behind on their mortgage payments and consequently requested a loan extension from

Defendant. Plaintiffs allege that they were granted the extension but received contradictory and

confusing messages from Defendant regarding their request. Plaintiffs further claim that, after their

residence flooded in June 2010, Defendant failed to disburse funds from an insurance settlement in

a timely manner. Finally, they allege that Defendant engaged in active misrepresentation of the facts

---

[1] The Court draws its factual account from the allegations contained in Plaintiffs' Original Complaint (doc. 1), as well as the attachments and documents incorporated therein by reference. *See Wolcott v. Sebelius,* 635 F.3d 757, 763 (5th Cir. 2011).

reported in an affidavit used to obtain a court order for foreclosure of Plaintiffs' home. Consequently, Plaintiffs are suing Defendant for breach of contract and fraud.

A.      *Factual Background*

1.      <u>Home Equity Loan</u>

On or about September 24, 2007, Plaintiffs Ernesto Lara and Lorena Lara (hereinafter "Plaintiffs") obtained a home equity loan from Defendant against their residence, 19380 State Highway 274, Kemp, Texas 75143 (the "Property"). Compl. Ex. 1. Mr. Lara executed a Texas Home Equity Note (the "Note") in the original principal amount of $59,000.00. Compl. II, ¶ 1. Plaintiffs then granted Defendant a security interest in the Property by executing the Texas Home Equity Security Instrument (the "Security Instrument"). *Id.* The Note requires Plaintiffs make "monthly payment(s) in the amount of U.S. $513.95." Compl. Ex. 1, ¶ 3. The Security Instrument requires Plaintiffs keep the Property insured against damage arising from various events, including floods. Compl. Ex. 2, ¶ 5. If the Property is damaged and insurance proceeds are received, the Security Instrument also requires the proceeds go towards repairing the Property. *Id.*

In May 2009 Plaintiffs fell behind on their Note payments. Compl. II, ¶ 2. On or about September 24, 2009, Plaintiffs made their first request for loan assistance. *Id.* at ¶ 5. According to Plaintiffs, this request was accepted by Defendant and an extension of the loan was effectuated for November 2009, December 2009, and January 2010. *Id.* Plaintiffs made their payments under the extended loan on time. *Id.* On or about January 12, 2010, Plaintiffs were notified by Defendant that the extension plan had been canceled. *Id.* However, Plaintiffs later spoke with a representative of Defendant, who advised them to disregard the prior communication that the extension had been canceled. *Id.* Consequently, Plaintiffs continued to make payments under the extension from

February through May 2010. *Id.*

On June 1, 2010, Plaintiffs were notified by Defendant that it was "withdrawing the extension of credit or modification with its remedies under the home equity security agreement which included a short sale and foreclosure sale as permitted by court order." *Id.* at ¶ 6. However, Plaintiffs claim they continued to receive correspondence from Defendant requesting tax and financial information regarding their extension request. *Id.* at ¶ 8. Plaintiffs also claim that they reviewed a letter stating that the pre-foreclosure sale had been canceled and their file had been closed. *Id.* Nevertheless, on July 22, 2010, Defendant filed a verified application in county court in Kaufman County, Texas for a home equity foreclosure. *Id.* at ¶ 9. In support thereof, Defendant offered an affidavit of Herman John Kennerty, "purportedly a custodian of records of Wells Fargo Bank, N.A." *Id.* On December 3, 2010, Defendant's application for home equity foreclosure was dismissed. *Id.* at ¶ 10.

On November 7, 2012, Defendant filed another verified application in county court in Kaufman County, Texas for a home equity foreclosure order. *Id.* at ¶ 12. It is not clear from the parties' filings whether this order was granted or dismissed.

2.      The Flood

On or about June 1, 2010, Plaintiffs' Property was flooded, resulting in $63,000.00 of damage. *Id.* at 7. Plaintiffs received $59,500.00 from their insurance company. *Id.* According to Plaintiffs, Defendant demanded they endorse the insurance check over to it. *Id.* Plaintiffs complied. *Id.* Months later, on February 8, 2011, Plaintiffs received from Defendant $19,266.00 from the insurance proceeds. *Id.* at ¶ 11. Plaintiffs used this money to repair some of the damage to the Property; however it was not enough to cover repairs for all of the damage. *Id.*

B.      *Procedural History*

- 3 -

Plaintiffs' Original Complaint (doc. 1) was filed with this Court on May 2, 2013. On June 7, 2013, Defendant moved to dismiss (doc. 4) all claims against it. Plaintiffs responded (doc. 11) on July 23, 2013. On August 6, 2013, Defendant replied (doc. 12).[2] The Motion is now ripe for the Court's review.

## II.

## LEGAL STANDARD

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes the court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)(quoting *Martin K. Eby Contr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). To survive such a motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

---

[2] On August 30, 2013, Defendant filed its Original Counterclaim (doc. 13), requesting the Court deny Plaintiffs any relief in the present litigation. In addition, Defendant requested (1) an order foreclosing the lien and ordering sale of the Property; (2) interest accrued and accruing through the date of judgment as provided under the Note and Security Instrument; (3) post-judgment interest at the maximum rate allowed by law on all amounts permitted by law from the date of judgment until the date paid; and (4) any other legal or equitable relief to which Defendant may be entitled. Orig. Count. 5. The Court will consider Defendant's Counterclaim in a separate order.

for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks and alterations omitted).

## III.

## ANALYSIS

Defendant moves to dismiss each of Plaintiffs' claims against it. The Court thus reviews each in turn below.

A.      *Breach of Contract*

Plaintiffs allege Defendant breached its contractual obligations to them in three ways: (1) by failing to provide insurance funds to repair the Property in a timely manner on June 1, 2010; (2) by failing to provide insurance funds to complete repair of the Property after February 2011; and (3) by failing to extend credit to Plaintiffs and sending contradictory and confusing messages regarding the loan extension. Compl. III, ¶ 1. Defendant argues that Plaintiffs' claims cannot stand because Plaintiffs fail to plead the elements of a breach of contract cause of action. Def.'s Mot. 7-12. In addition, Defendant contends that Plaintiffs' claims are barred by the statue of frauds. *Id.* at 12.

Under Texas law, "[t]he elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance tendered by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach." *Wright v. Christian & Smith*, 950 S.W.2d 411, 412 (Tex. App. 1997). Further, "a plaintiff suing for breach of contract must point to a specific provision in the contract that was breached by the defendant." *King v. Wells Fargo Bank,*

*N.A.*, No. 3:11-CV-0945-M-BD, 2012 WL 1205163, at *2 (N.D. Tex. Mar. 20, 2012) (collecting cases).

Plaintiffs' Original Complaint acknowledges two contracts between the parties, the Note and the Security Instrument. However Plaintiffs fail to identify which contract–or provision–supports their claims. Thus, the Court is left to assume that, with respect to the insurance proceeds, the Plaintiffs rely on the Security Instrument, in particular on Section 5 entitled "Property Insurance." Compl. Ex. 2, ¶ 5. This section outlines, *inter alia*, Borrower's obligations to insure the Property against certain hazards, including flooding. *Id.* It further provides that, in the event of loss and absent a separate agreement in writing between Lender and Borrower, any insurance proceeds shall be applied to restoration or repair of the Property. *Id.* When such repair or restoration is undertaken,

> Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.

*Id.*

By the language of this provision Defendant was entitled to hold the proceeds Plaintiffs obtained from their insurance company. What's more, Defendant was also entitled to retain such money until it had inspected the Property and determined that repairs had been completed to its satisfaction. Nowhere does this provision require Defendant to release all the funds to Plaintiffs either on the date of damage or upon completion of certain repairs. Though the Court recognizes the provision requires Defendant inspect the Property promptly, this does not, in turn, require it to disburse the money promptly. Section 5 is explicit that Defendant is allowed to disburse the funds

over a period of time as it is satisfied the Property has been sufficiently repaired. From the scant facts that Plaintiffs have provided it seems this is in fact what occurred; Defendant held the insurance funds and then released a portion to cover some repairs. That the amount released was not enough to cover *all* repairs is not itself a breach. After all, nowhere do Plaintiffs claim that the Property had been completely restored or that Defendant inspected and approved the repairs but nevertheless withheld the funds necessary to pay for the completed work. Instead, they argue simply that Defendant failed to pay them in a timely manner on or about the date of the flood, and also that Defendant released only a portion of the proceeds in February 2011. These factual allegations do not support the elements required to prove breach of contract. Accordingly the Court **DISMISSES** Plaintiffs' claims regarding the insurance proceeds.

The Court now considers Plaintiffs' remaining breach of contract claim regarding the loan extension. Plaintiffs state in their opposition brief that "[t]he gist of Plaintiffs' contract claim is that Defendant promised Plaintiffs that Defendant would modify the contract granting Plaintiffs' loan extension." Pls.' Opp. 8. They later identify the relevant contract as "a contract to extend a modification of credit . . . ." *Id.* at 9. Finally they argue "Defendant breached by failing to extend the loan modification after June, [sic] 2010." *Id.* Defendant argues that Plaintiffs' claim must fail because Plaintiffs admit they defaulted under the Note. Def.'s Mot. 8. Further, Defendant contends that it never breached because Plaintiffs were never entitled to a loan modification. *Id.* at 9. Finally, Defendant insists that Plaintiffs' claim is barred by the statute of frauds. *Id.* at 12.

"Under Texas law, if one party to a contract breaches, there is no obligation for the non-breaching party to continue performance." *United States ex rel. Wallace v. Flintco Inc.*, 143 F.3d 955, 968 (5th Cir. 1998) (citations omitted). There is no dispute that the Note was a valid contract that

required Plaintiffs to pay Defendant a monthly payment of $513.95. Compl. Ex. 1, ¶ 3. There is also

no dispute that, by the terms of the Note, failing to pay the full amount each month would result in

default. *Id.* By Plaintiffs' own admission, they fell behind on their payments in May 2009. Compl. II,

2. Therefore, Plaintiffs defaulted long before Defendant's alleged breach. Accordingly, they cannot

maintain a suit for breach of contract under the Note. *See Wallace*, 143 F.3d at 968; *see also May v.

Wells Fargo Bank, N.A.*, No. 4:11-3516, 2013 WL 4647673, at *3 (S.D. Tex. Aug. 29,

2013) ("Because Plaintiffs were in default of the contract's terms, they cannot maintain a suit for

breach of contract."); *Browning v. PHH Mortg. Corp.*, No. H-12-0886, 2013 WL 3244094, at *4

(S.D. Tex. June 26, 2013) ("Because Plaintiff failed to perform his payment obligations under the

security instrument, any alleged subsequent breach of [Defendant's] obligations under the agreement

is excused."); *Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691, 692 (Tex. 1994) ("A fundamental

principle of contract law is that when one party to a contract commits a material breach of that

contract, the other party is discharged or excused from any obligation to perform.").

　　　To the extent Plaintiffs are not suing under the Note, but rather under a promise to modify

the Note, their claim nevertheless fails. "Under Texas law, a 'loan agreement in which the amount

involved in the loan agreement exceeds $50,000 in value is not enforceable unless the agreement is

in writing and signed by the party to be bound or by that party's authorized representative.'" *Gordon

v. JPMorgan Chase Bank, N.A.*, 505 F. App'x 361, 364 (5th Cir. 2013) (unpublished) (quoting Tex.

Bus. Com. Code § 26.02(b)). "The term 'loan agreement' includes any agreement or promise where

a financial institution 'loans or delays repayment of or agrees to loan or delay repayment of money,

goods, or another thing of value or to otherwise extend credit or make a financial accommodation.'"

*Gordon*, 505 F. App'x at 364 (quoting Tex. Bus. Com. Code § 26.02(a)(2)). Finally, "[w]hen a

written agreement is governed by the statute of frauds, it cannot be materially modified by a subsequent oral agreement." *Gordon*, 505 F. App'x at 364; *see also Dracopoulas v. Rachal*, 411 S.W.2d 719, 721 (Tex. 1967).

Here, the Note is a "loan agreement" within the meaning of the Texas Business Code and is thus governed by the statute of frauds. The parties' alleged agreement to modify the Note by granting an extension of credit is therefore also subject to the Texas statute of frauds and must be in writing to be enforceable. *See  Gordon*, 505 F. App'x at 364; s*ee also Chavez v. Wells Fargo Bank, N.A.*, No. 4:11-CV-846-Y, 2013 WL 3762894, at *5 (N.D. Tex. July 9, 2013). Accordingly, it is Plaintiffs' burden to demonstrate that the statue of frauds is satisfied. *See Hugh Symons Group, plc v. Motorola, Inc.*, 292 F.3d 466, 469 (5th Cir. 2002). In their filings Plaintiffs have failed to allege–let alone prove–that this "contract to extend a modification" was ever reduced to writing. Instead they have insisted, incorrectly, that the statute of frauds simply does not apply. Pls.' Opp. 9. Consequently, their claim of breach of contract with respect to the agreement to offer a loan extension fails as a matter of law.[3]

Because the Court **DISMISSES** all of Plaintiffs' claims of breach of contract, it similarly **DISMISSES** Plaintiffs' claims for attorney's fees with respect thereto.

---

[3] Though Plaintiffs do not plead promissory estoppel, the Court has nevertheless considered this possibility in light of Plaintiffs' allegation (albeit with respect to their fraud claim) that "Plaintiffs relied on the promise of Defendant to make a modification of the agreement . . . ." Pls.' Opp. 10. Though "promissory estoppel is primarily a defensive theory, it is also available as a cause of action for a 'promisee who has acted to his detriment in reasonable reliance on an otherwise unenforceable promise.'" *Gordon*, 505 F. App'x at 365 (quoting *Ford v. City State Bank of Palacios*, 44 S.W.3d 121, 140 (Tex. App.–Corpus Christi 2001, no pet.)). Even under this theory, though, Plaintiffs' claim still fails. Because Plaintiffs are relying on an oral promise that is otherwise barred by the statue of frauds, they must show that Defendant "promised to sign a written document that would satisfy the statute of frauds." *Ford*, 44 S.W.3d at 140. As Plaintiffs make no such allegation, they cannot support a promissory estoppel cause of action for breach of contract with respect to the loan modification.

B.    *Fraud*

The Court next considers Plaintiffs' claim of fraud. Plaintiffs allege: (1) that Defendant "engaged in active misrepresentation of the facts reported in the affidavit to obtain a court order for foreclosure"; and (2) that "Plaintiffs relied upon the representation of Defendant as expressed in the numerous contradictory and encouraging communications for the extension and/or modification of the loan." Compl. III, ¶¶ 2, 4. They further claim that, as a result of Defendant's promises and their reliance thereon, they suffered considerable damage. Pls.' Opp. 11. Defendants argue that Plaintiffs' claim cannot stand because they fail to meet Rule 9(b)'s heightened pleading standard, and Plaintiffs fail to establish the necessary elements of a fraud claim. Def.'s Mot. 14-20. Finally, Defendant argues that Plaintiffs' claim is barred by the statute of frauds and the economic loss rule. *Id.* at 20-22.

The elements of fraud are:

> (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

*Indian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011). "A promise of future performance constitutes an actionable misrepresentation if the promise was made with no intention of performing at the time it was made." *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009) (per curiam) (quoting *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998)).

Fraud claims are subject to a heightened pleading standard under Rule 9(b). Fed. R. Civ. P. 9(b). In addition, the Fifth Circuit "interprets Rule 9(b) strictly, requiring a plaintiff pleading fraud

to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Herrmann Holdings Ltd. v. Lucent Techs., Inc.*, 302 F.3d 552, 564-65 (5th Cir. 2002) (citations and internal quotations omitted). In other words, "Rule 9(b) requires 'the who, what, when, where, and how' to be laid out." *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010) (quoting *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003)).

Considering Plaintiffs' filings and the relevant law, it is clear that Plaintiffs' allegation of fraud with respect to Herman John Kennerty's affidavit falls short of stating a cause of action. Though Plaintiffs make clear that Mr. Kennerty "was not a custodian of the records; had no personal knowledge of the facts stated in the affidavit; and, was simply acting as a document examiner in a foreclosure mill maintained by Defendant," they fail to state how any of his statements were knowingly false or, more critically, how Plaintiffs relied on them. Compl. III, ¶ 2. If anything, Plaintiffs seem to suggest that Defendant, through Mr. Kennerty, was attempting to mislead the county court by providing a false affidavit in order to obtain a foreclosure order. However improper that conduct–if true–may have been, it is not fraud with respect to Plaintiffs. Thus, their claim cannot stand.

Regarding their second allegation that Defendant gave them "numerous contradictory and encouraging communications for the extension and/or modification on the loan," the Court finds this claim also cannot stand. Under Texas law, a tort claim such as fraud must include injury to plaintiff apart from an alleged breach of contract. *See Horne v. Bank of America, N.A.*, No. 4:12-CV-622-A, 2013 WL 765312, at *5 (N.D. Tex. Feb. 28, 2013) (citing *D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 663-64 (Tex. 1998) (per curiam)). "When an injury is only the economic loss to

the subject of a contract itself, the action sounds in contract alone." *D.S.A., Inc.*, 973 S.W.2d at 663-64. Here, Plaintiffs' fraud claim flows directly from the Note and Security Instrument because, absent the original agreements, any discussion of modification would not have existed. *See Horne*, 2013 WL 165312, at *5. Further, the injuries Plaintiffs allege–loss of equity in the home and loss of insurance proceeds–also flow from the contracts. *See id.* Thus, the Court agrees with Defendant that Plaintiffs' claim is barred as a matter of law by the economic loss doctrine.[4]

Accordingly, the Court **DISMISSES** Plaintiffs' fraud claims as well as their request for exemplary damages.

### IV.

### CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (doc. 4) is **GRANTED**. Plaintiffs' claims and this case are **DISMISSED with prejudice**.

**SO ORDERED.**

**SIGNED: December 2, 2013.**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

---

[4] Because the Court finds that Plaintiffs' fraud claim is so barred, it does not reach Defendant's arguments regarding Plaintiffs' other pleading deficiencies or the statute of frauds.